Filed 11/24/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| D.F.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF HUMBOLDT COUNTY,<br><br>    Respondent;<br><br>HUMBOLDT COUNTY DEPARTMENT OF HEALTH & HUMAN SERVICES et al.,<br><br>    Real Parties in Interest. | A146191<br><br>(Humboldt County<br>Super. Ct. No. JV150104) |

**INTRODUCTION**

The juvenile court denied reunification services to D.F., the mother of A.M. (Mother), under Welfare and Institutions Code section 361.5, subdivision (b)(11), because her parental rights to another child had been permanently severed.[1] Mother challenges the order bypassing reunification services and setting a permanency planning hearing, asserting subdivision (b)(11) does not apply because her parental rights were severed in another state. Mother relies on our decision in *Melissa R. v. Superior Court* (2012) 207 Cal. App.4th 816 [144 Cal.Rtpr.3d 48] (*Melissa R.*), in which we held section 361.5, subdivision (b)(10), authorizing the bypass of reunification services where services have been terminated due to failure to reunify as to a sibling, applies by its plain terms only to a termination of services and removal of a sibling in a California

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

1

dependency proceeding.  As we explain, the plain language of subdivision (b)(11), unlike that of subdivision (b)(10), contains no such limitation.  We therefore deny mother's writ petition challenging the denial of reunification services and setting a section 366.26 hearing.

## BACKGROUND

A.M. is a medically fragile infant born in March 2015, approximately three months premature.  At birth, he weighed one pound 13 ounces, and tested positive, as did Mother, for marijuana.  He spent the first three months of his life in a pediatric intensive care unit.

The Humboldt County Department of Health and Human Services (Department) filed a section 300 petition alleging serious physical harm[2] and failure to protect.  The juvenile court detained A.M.  Although the Department provided Mother with housing one block from the hospital, she rarely visited the struggling infant, despite telephone calls from nurses and the social worker encouraging her to do so.

In a report prepared for the jurisdictional hearing, the social worker reported Mother had lost custody of two other children.  One child was living with his biological father.  The other had been adopted after Mother's parental rights were terminated in Texas.

The Texas social worker provided additional information.  Mother had been homeless at the time her two other children were detained in that state, and she had sent them to live with her wife's mother in Texas, while she and her wife remained in San Diego.  The wife's mother, however, "dropped the children off at a 'Children's Crisis Center' because she couldn't meet their needs."  The children were then placed in protective custody, and the Texas social worker attempted to contact Mother and her wife for three months, without success.  Mother and her wife later arrived in Texas, where Mother was referred for drug testing, counseling and family therapy, and was diagnosed with depression.  Mother and her wife then "disappeared for four months" and neither

---

[2] The serious physical harm allegation was subsequently stricken.

2

visited her children nor remained in touch with the social worker. The Texas court terminated her parental rights as to the younger child, freeing her for adoption by a non-family member.

In the instant dependency proceeding, Mother signed a "Waiver of Rights" and agreed to "submit the petition on the basis of the social worker's . . . report." The juvenile court sustained the petition as amended to count b-3, which alleged in part: "The baby has remained in the intensive care unit at the hospital for over two and a half months. The mother has failed to regularly visit with the child, bond with the child, receive instruction on how to care for the child's needs, and authorize medical treatment for the medically fragile new born though the mother was staying only 1 block away from the hospital. Such mental illness, developmental disability or substance abuse places the child at risk of serious injury or illness." The court further ordered, "When [A.M.] is discharged from the NICU in Redding he will be transferred via 'special medical transport.' The closest foster home for the child that can meet his medical needs is in the Bay Area. The department will have him transferred to UCSF then placed in the [B]ay [A]rea."

Prior to the disposition hearing, the Department requested that the court bypass reunification services to Mother under both subdivisions (b)(10) and (11) of section 361.5. Following a hearing, the court denied reunification services only under section 361.5, subdivision (b)(11), based on the termination of her parental rights to her child in Texas. The court found "The Texas Court ordered parental rights permanently severed, and the currently detained child was removed from the same parent, who in either case, has not subsequently made reasonable efforts to treat the problems that lead to removal of the sibling or half sibling."

## DISCUSSION

"Ordinarily, when a child is removed from parental custody, the juvenile court must order services to facilitate the reunification of the family. (§ 361.5, subd. (a).) ' "Nevertheless, as evidenced by section 361.5, subdivision (b), the Legislature recognizes that it may be fruitless to provide reunification services under certain

3

circumstances. [Citation.] Once it is determined one of the situations outlined in subdivision (b) applies, the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources." ' [Citation.] An order denying reunification services is reviewed for substantial evidence. [Citation.]" (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914 [136 Cal.Rtpr.3d 309].)

Section 361.5, subdivision (b)(11) provides: "Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following: [¶] . . . [¶] (11) That the parental rights of a parent over any sibling or half sibling of the child had been permanently severed, and this parent is the same parent described in subdivision (a), and that, according to the findings of the court, this parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from the parent."

Relying on *Melissa R.*, Mother asserts subdivision (b)(11) permits the bypass of reunification services only when parental rights to a sibling or half sibling have been severed by a California court. In *Melissa R.*, reunification services for a half-sibling had been terminated in Wisconsin and the child had been placed in the care of his maternal grandmother. (*Id.* at p. 820.) The California juvenile court denied reunification services under subdivision (b)(10), which provides in relevant part that reunification services may be bypassed where a court has "ordered termination of reunification services for any siblings or half siblings of the child because the parent or guardian failed to reunify with the sibling or half sibling *after the sibling or half sibling had been removed from that parent or guardian pursuant to Section 361*." (§ 361.5, subd. (b)(10), italics added; *Melissa R.*, *supra*, 207 Cal.App.4th at p. 819.)

On appeal, this court held that because subdivision (b)(10) expressly requires removal of the sibling or half-sibling "pursuant to Section 361" of the California Welfare and Institutions Code, the subdivision on its face does not apply where a sibling or half-sibling has been removed in another state. (*Melissa R., supra*, 207 Cal.App.4th at

4

p. 822.)  We observed that the Legislature knows how "to write in language addressing out-of-state removal of a dependent sibling . . . but chose not to do so" in subdivision (b)(10).  (*Melissa R.*, at p. 823.)  Moreover, "there are sound reasons why the Legislature might have chosen to limit the application of section 361.5, subdivision (b)(10) to orders terminating reunification made under the laws and procedures of this state"—namely, that California law requires such orders to be made on "clear and convincing" evidence and guarantees a parent the right to a hearing and right to contest a termination order.  (*Ibid.*)

Subdivision (b)(11), in contrast, contains no language specifying the severance of parental rights to a sibling or half sibling must be pursuant to a Welfare and Institutions Code provision.  Nor does the contextual structure of the subdivision suggest a severance of parental rights must occur in California.  "In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted."  (Code Civ. Proc., § 1858.)  " ' "[I]f the statutory language is not ambiguous, then we presume the Legislature meant what it said, and the plain meaning of the language governs." ' "  (*Melissa R.*, *supra,* 207 Cal.App.4th at p. 822.)  On its face, the language of subdivision (b)(11) is unambiguous—there is no limitation of its application to cases, like this one, where parental rights to a sibling or half sibling have been severed in a jurisdiction other than California.

Nevertheless, Mother contends *Melissa R*. "clearly conclude[d]" out-of-state statute[s] and rulings may only be considered if the Legislature specifically permits it in the affirmative."  Because subdivision (b)(11) "omits any mention of the applicability of out-of-state statutes," Mother maintains the holding of *Melissa R.* as to subdivision (b)(10) is also controlling as to subdivision (b)(11).  However, we did not reach any such conclusion in *Melissa R.*  Rather, we focused on the specific language of subdivision (b)(10) and concluded its express reference to section 361 could mean only one thing— the termination of reunification services for a sibling or half sibling and removal of that child had to have occurred in a dependency proceeding conducted under California law.

5

But we cannot draw any such conclusion as to subdivision (b)(11). Indeed, had the Legislature intended to limit subdivision (b)(11) to only those cases where parental rights to a sibling or half sibling have been severed in California, it could easily have done so, as the limiting language of subdivision (b)(10) makes clear. Instead, the Legislature chose not to include such limiting language. The omission is significant, because it demonstrates, in a variation of the concept *expressio unius est exclusio alterius*, that the Legislature made a conscious decision to limit bypass of reunification services based on *termination of reunification services* to a sibling or half sibling to instances in which the sibling was removed under California law, but to allow bypass of services based on *termination of parental rights* to a sibling or half sibling without regard to the jurisdiction in which that termination occurred.

While Mother observes "California's standard of proof for removal [following failure to reunify and termination of services] is higher than that of Texas," this fact, rather than aiding Mother, suggests why the Legislature may have chosen to treat failure to reunify and termination of reunification services under subdivision (b)(10), differently from the severance of parental rights under subdivision (b)(11). As the Department points out, the burden of proof in determining whether *parental rights* should be severed is clear and convincing evidence in all states. "Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." (*Santosky v. Kramer* (1982) 455 U.S. 745, 747–748 [102 S.Ct. 1388, 71 L.Ed.2d 599].) The California Legislature could well have determined when it enacted the bypass provisions now set forth in subdivisions (b)(10) and (11) more than a decade later (Stats. 1996, ch. 1083, § 2.7), that this federal constitutional mandate provides adequate substantive and procedural assurances when it comes to the *severance of parental rights*, whether in California or another jurisdiction.

Mother lastly claims the juvenile court's finding as to the second requirement of subdivision (b)(11)—that after severance of her parental rights to a sibling or half sibling

6

she has "not subsequently made a reasonable effort to treat the problems that led to the removal of the sibling or half-sibling"—is not supported by substantial evidence.

"The reasonable effort requirement focuses on the extent of a parent's efforts, not whether he or she has attained 'a certain level of progress.' [Citation.] 'To be reasonable, the parent's efforts must be more than "lackadaisical or half-hearted." ' [Citation.] However, '[t]he "reasonable effort to treat" standard "is not synonymous with 'cure.' " ' [Citation.] [¶] We do not read the 'reasonable effort' language in the bypass provisions to mean that any effort by a parent, even if clearly genuine, to address the problems leading to removal will constitute a reasonable effort and as such render these provisions inapplicable. It is certainly appropriate for the juvenile court to consider the duration, extent and context of the parent's efforts, as well as any other factors relating to the quality and quantity of those efforts, when evaluating the effort for reasonableness. And while the degree of progress is not the focus of the inquiry, a parent's progress, or lack of progress, both in the short and long term, may be considered to the extent it bears on the reasonableness of the effort made." (*R.T. v. Superior Court, supra*, 202 Cal.App.4th at p. 914.)

Mother did not present any evidence of efforts to address the problems that lead to the severance of her parental rights, which was predicated on a sustained allegation of "Refusal to Assume Parental Responsibility." Although in her briefing on appeal here Mother attempts to minimize what transpired in Texas as "an appropriate plan for the care of the children by sending the siblings to Texas" that went awry, that was hardly the case. The grandparents to whom she shuttled the children were unable to care for them due to their limited financial means, health issues, and one-bedroom residence. And thereafter, Mother failed to contact Texas authorities about the children when asked to do so, made no arrangements to pick up the children despite being told by Texas authorities of the need to do so, refused to provide contact information for the children's fathers and maternal grandmother, and failed to provide necessities for the children, including medication. This was not an appropriate care plan that simply did work out—this was abject neglect and abandonment.

7

Mother's conduct here with regard to A.M. was more of the same. Even before the child was born, Mother failed to procure regular prenatal care and continued to use marijuana while pregnant, leading to the newborn's positive test for THC. The Department then provided Mother with housing one block from the hospital where A.M. was in the intensive care unit, but she shouldered no parental responsibility for the infant. She rarely visited him during his three-month hospitalization, despite repeated entreaties to do so by his nurses and the social worker. In short, whether Mother's refusal to assume parental responsibilities was due to mental health issues or substance abuse issues, she made no effort to address these fundamental problems. The social worker did report that Mother was working at a supermarket and residing with her employer. Although this step was laudable, lack of employment was not the reason for the termination her parental rights. Nor was there any evidence this housing was suitable for her medically needy infant. In sum, ample evidence supports the juvenile court's findings that Mother had not made a reasonable effort to treat the problems that led to the severance of her parental rights.

## DISPOSITION

Mother's petition for an extraordinary writ is denied. The stay of the order authorizing the minor to be placed out of state is vacated. This opinion is final in this court on filing. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2)(A).)

8

_____

Banke, J.

We concur:

_____

Humes, P. J.

_____

Margulies, J.

A146191, *D.F. v. Superior Court of Humboldt County*

9

Trial Judge:                                   The Honorable Christopher G. Wilson

Trial Court:                                    Humboldt County Superior Court

Javier Barraza for Petitioner.

Jeffrey S. Blanck, County Counsel and Anne H. Nguyen, Deputy County Counsel for Real Parties in Interest, Humboldt County Department of Health and Human Services et al.

Marie Ferreboeuf for Real Party in Interest, the Minor.