Filed 10/5/21  In re K.T. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| In re K.T. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. C.T., Defendant and Appellant. | E076484 (Super.Ct.Nos. J284828 & J284829) OPINION |

APPEAL from the Superior Court of San Bernardino County.  Christopher B. Marshall, Judge.  Affirmed.

Donna P. Chirco, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle D. Blakemore, County Counsel, and David Guardado, Deputy County Counsel, for Plaintiff and Respondent.

1

INTRODUCTION

Defendant and appellant C.T. (mother) challenges a juvenile court's order denying her reunification services pursuant to Welfare and Institutions Code[1] section 361.5, subdivision (b)(10) and (b)(11), as to her son, K.T. She contends the court erred in denying her services since she made reasonable efforts to treat the problems that had led to the removal of her two other children, and since reunification services were in K.T.'s best interest. Mother additionally argues the court erred in granting sole custody of her child M.T. to his father. We affirm.

PROCEDURAL BACKGROUND

On April 14, 2020, the San Bernardino County Children and Family Services (CFS) filed petitions on behalf of K.T., who was eight months old at the time, and M.T., who was three years old. K.T. and M.T. have different fathers.[2] Both petitions alleged that K.T. and M.T. (the children) came within the provisions of section 300, subdivisions (b) (failure to protect) and (j) (abuse of sibling).[3] Specifically, the petitions alleged that mother had a prescription medication substance abuse problem, which she had failed to, or refused to, rehabilitate from. The petitions also alleged that mother had an untreated mental illness (bipolar disorder), and that the children's siblings, T.T. and P.T., were

---

[1] All further statutory references will be to the Welfare and Institutions Code unless otherwise noted.

[2] Neither father is a party to this appeal.

[3] M.T.'s petition also alleged that he came within section 300, subdivision (g) (no provision for support) since the whereabouts of his father were unknown at that time.

2

adjudged dependents in 2011, due in part to mother's substance abuse issues, criminal history, mental health issues, and domestic violence. Mother's reunification services were terminated as to both T.T. and P.T., and her parental rights as to T.T. were terminated. The petitions further alleged that mother had not yet addressed the issues that led to the termination of services/parental rights in the siblings' case.

The social worker filed a detention report stating that CFS received an immediate response referral alleging caretaker incapacity. An officer found mother unconscious on the side of the road, next to her vehicle; the children were with her, either in the vehicle or next to it.[4] Mother had pinpoint, nonresponsive pupils. It took two doses of Narcan to bring her to consciousness, leading to the conclusion she had overdosed on an opioid. Mother later reported that she was having a migraine and asked a friend for some medication. She was given, and took, an unknown pill. When the pain did not subside, she took an additional pill. Mother tested positive for opiates, benzodiazepines, and marijuana.

Mother was taken to the hospital and interviewed by a social worker. She reported a history of bipolar disorder and depression for which she said she took prescribed medication. She denied having a substance abuse problem. The social worker discovered that mother had a previous dependency case regarding her children, P.T. and T.T, from March 2011 to May 2012. In that case, mother was granted reunification

---

[4] The detention report first reflects that two other children were with mother at the vehicle; however, the report then reflects that only K.T. and M.T. were with mother at the vehicle.

services. Her reunification services were terminated as her progress in her case plan components was unsatisfactory. Ultimately, mother's parental rights as to T.T. were terminated on December 13, 2012, and T.T. was adopted by his paternal grandmother. P.T. was placed under family maintenance services with her father and the case was dismissed with full custody to P.T.'s father.

In the current case, the court held a detention hearing on April 15, 2020, and detained the children in foster care.

*Jurisdiction/Disposition*

The social worker filed a jurisdiction/disposition report, recommending that the court sustain the petitions. She recommended that K.T. be removed from mother and his father, R.S., and placed in out-of-home care, with reunification services provided to R.S. The social worker recommended the court deny mother reunification services pursuant to the bypass provisions under section 361.5, subdivision (b)(10) and (b)(11). The social worker recommended that custody of M.T. be granted to his father, R.E., a family law custody exit order be issued, and the dependency be dismissed. R.E. was the noncustodial parent of M.T. and was willing and able to assume custody. R.E. reportedly was unaware of the circumstances surrounding M.T.'s removal, and he had a safe, stable living environment for M.T.

Attached to the report was a copy of the first amended dependency petition filed May 24, 2011, as to P.T. and T.T. The petition reflects allegations that mother abused controlled substances (b-2) and had a mental health diagnosis of bipolar disorder (b-3). The b-2 allegation was crossed out with the word "stricken" written across it. A minute

4

order dated May 24, 2011, reflects that the juvenile court found the allegations in the petition true, removed P.T. and T.T. from mother's custody,[5] and ordered reunification services. A minute order dated August 15, 2012, reflects the juvenile court terminated mother's reunification services as to T.T., and a minute order dated December 13, 2012, reflects the court terminated her parental rights as to T.T.

During an interview, mother said she was prescribed psychotropic medications approximately 10 years ago but did not know how to use them. She then said she was diagnosed with bipolar disorder 10 years ago, and she stopped taking her prescriptions years ago because of the way they made her feel. Specifically, she said she was prescribed Seroquel and Zypreza, but had not taken her medication for almost five years. Mother said she was pregnant with her other son, A.T., and was unable to continue the medications. She then went through two more pregnancies with M.T. and K.T. and reportedly refrained from taking the medications. Mother said she was not currently taking any psychotropic medications and did not believe the medications were needed any longer. She was on prescription medication for her migraines and her thyroid diagnosis. When further addressing substance abuse issues, mother denied that she used any illicit or prescription drugs. She admitted smoking marijuana.

The social worker further reported that mother failed to show up for drug tests scheduled on May 4, 2020, and June 11, 2020. However, she submitted to an on-demand

[5] The minute order does not reflect the striking of the section 300, subdivision (b)(2) allegation.

drug test on May 1, 2020, and tested positive for marijuana and negative for all other substances.

The social worker opined that the prognosis for mother was poor since she failed to reunify with T.T. and P.T. and appeared to still struggle with substance abuse. Despite losing P.T. and T.T., she used substances around the children. Furthermore, she had not addressed her mental health issues and still had not sought professional help with her issues.

The court held a jurisdiction/disposition hearing on June 24, 2020, and mother set the matter for contest. The court set a hearing for September 15, 2020.

The social worker filed an additional information to the court memorandum on September 14, 2020. She reported that mother tested positive for marijuana on June 15, June 30, and July 14. On July 31, she tested positive for marijuana and benzodiazepines. On August 31, she tested positive for marijuana and opiates. When asked about the positive results, mother stated that she was hospitalized two times in August for migraines, and she was unsure what medications the doctors gave her while she was admitted. She explained that her positive benzodiazepines test was due to some prescription medication; however, the social worker noted that the medicine was prescribed on August 14, 2020. Mother further reported that she was prescribed hydrocodone and ibuprofen, and that she was currently taking Lamictal every night for bipolar disorder. She also said her doctor told her to use marijuana to help aid her migraines, and that she had also been prescribed Imitrex for her migraines. She said even

6

though she had been prescribed different medications, she was only using marijuana and Lamictal.

The social worker reported that she received an anonymous message on or about July 24, 2020. The message stated that mother was using drugs, specifically "crack," and that she would use someone else's urine to pass the drug tests. The anonymous reporter also said mother was homeless and slept in a car, and she was in an abusive relationship.

The social worker also reported that mother provided her with certificates of completion for an online parent education class and an online drug and alcohol awareness class that she found and completed on her own. Mother said she was addressing her mental health issues with Dr. Patel; however, when the social worker contacted Dr. Patel's office to get information, the receptionist said they did not have mother's consent to release it. Mother was referred to Family Matters for individual counseling, but the social worker had not received a progress report from them. Mother also reported that she was attending parenting classes twice a week, and that she had attended seven Alcoholics Anonymous/Narcotics Anonymous (AA/NA) classes. However, the social worker had not received verification of her class attendance.

The social worker opined that mother was apparently trying to comply with all recommended services but was struggling. Although mother said she had been prescribed a lot of medication, she was unable to provide a list of the prescribed medicines, the dates they were prescribed, or say whether she took them. Moreover, although she said she was only using marijuana and Lamictal, she tested positive for benzodiazepines and opiates.

7

The court held a contested jurisdiction/disposition hearing on September 15, 2020, but continued the matter to January 8, 2021.

The social worker filed another additional information to the court memorandum on January 8, 2021, and reported that mother failed to show up for her drug tests on November 2, November 4, December 10, and December 22, 2020. She tested positive for ethanol on October 30, 2020. Mother insisted she could not have tested positive for ethanol because she does not drink alcohol. She stated that she could have been sick and possibly took NyQuil.

The social worker reported that mother was receiving services at Cedar House and tested positive for methamphetamines on December 4, 2020, and again on December 8, 2020. Her levels between the two dates were consistent, indicating that she continued to use since her levels would have decreased. Nonetheless, she was adamant that she had never used methamphetamines. Cedar House asked mother to complete a crisis session and update her treatment plan, but she refused and remained adamant that she did not use methamphetamines. Mother's last session at Cedar House was on December 16, 2020, and the counselor reported that she would be terminated from the program. However, the counselor later said she would accept her back if she followed the protocols, and mother agreed.

Mother continued to report she was currently in counseling, but the social worker was unable to get a report from her therapist, since her therapist "[did] not work with CFS." Dr. Patel's office had not completed a certificate of completion at that point.

8

A contested jurisdiction hearing was held on January 8, 2021. Mother testified at the hearing that she had a juvenile dependency case 10 years earlier, which was related to prescription medication substance abuse. Her reunification services and parental rights to T.T. were terminated. Mother did not believe she had a substance abuse problem but acknowledged she was taking prescribed marijuana for migraines. She also acknowledged that she had tested positive for methamphetamines twice at Cedar House, but still denied taking it. She said she took a hair follicle test that proved she did not have a substance abuse problem, but the judge would not allow her to put it into evidence. Mother acknowledged she was enrolled at Cedar House to address substance abuse, and said she learned she was really dependent on marijuana for her pain. However, she then said she stopped using marijuana and was just taking over-the-counter medication for her migraines.

Mother testified she had been diagnosed with bipolar disorder for which she was regularly taking medication 10 years ago, but she said the medication was too strong for her. She stated that she had not taken any prescription medication since then, until this year, and said she was treating her mental health by seeing a therapist weekly. She did not believe her mental health put her children at risk when they were with her.

The court found that K.T. and M.T. came within section 300, subdivisions (b) and (j). It noted the testing that mother had been provided was more credible than mother's testimony at the hearing. It found that her positive tests for benzodiazepines, opiates, and methamphetamines, and her multiple failures to show up for tests, demonstrated that she "is still actively fighting a medication and substance abuse issue." The court stated that it

9

considered whether there had been reasonable efforts to address her issues, noting mother's positive tests from the prior month, as well as her own testimony that she had a dependency on marijuana that needed to be dealt with. The court considered the duration, extent, and context of mother's efforts, and concluded that she had "a longstanding issue and problem with substance abuse and medication abuse." It then found that she could be denied services under section 361.5, subdivision (b)(10) and (b)(11).

As to K.T., the court found that mother had not made reasonable efforts to treat the problems that led to removal of the half-siblings, and that it was not in K.T.'s best interest to offer mother services. The court declared K.T. a dependent, ordered reunification services for his father, denied mother reunification services pursuant to section 361.5, subdivision (b)(10) and (b)(11), and set a six-month review hearing.[6] As to M.T., the court found that R.E. was the presumed father, and that he was the noncustodial parent who desired and was willing and able to assume custody of M.T. It thus ordered M.T. removed from mother's custody, placed him in R.E.'s custody under family law custody orders, and dismissed his dependency case.

---

[6] The court also declared mother's other child, A.T., a dependent, denied mother reunification services under section 361.5, subdivision (b)(10) and (b)(11), and set a section 366.26 hearing as to him.

## DISCUSSION

### I. Substantial Evidence Supports the Court's Order Denying Mother Reunification Services

Mother argues the court erred in denying her reunification services under section 361.5, subdivision (b)(10) and (b)(11), since she made reasonable efforts to treat the problems that led to removal of K.T.'s half siblings, and services were in K.T.'s best interest. We conclude the court properly bypassed mother's services.

A. *Relevant Law*

Section 361.5, subdivision (b)(10), states that " '[r]eunification services need not be provided to a parent . . . when the court finds, by clear and convincing evidence, any of the following: [¶] . . . [¶] (10) That the court ordered termination of reunification services for any siblings or half siblings of the child because the parent . . . failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent . . . and that parent . . . has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling . . . .' " (*In re B.H.* (2016) 243 Cal.App.4th 729, 735-736 (*B.H.*).)

"Section 361.5, subdivision (b)(11) provides: 'Reunification services need not be provided to a parent . . . when the court finds, by clear and convincing evidence, any of the following: [¶] . . . [¶] (11) That the parental rights of a parent over any sibling or half sibling of the child had been permanently severed, and this parent is the same parent described in subdivision (a), and that, according to the findings of the court, this parent has not subsequently made a reasonable effort to treat the problems that led to removal of

11

the sibling or half sibling of that child from the parent.' " (*D.F. v. Superior Court* (2015) 242 Cal.App.4th 664, 669-670.)

"Section 361.5, subdivision (b) 'reflects the Legislature's desire to provide services to parents only where those services will facilitate the return of children to parental custody.' [Citations.] When the court determines a bypass provision applies, the general rule favoring reunification is replaced with a legislative presumption that reunification services would be ' "an unwise use of governmental resources." ' " (*In re Allison J*. (2010) 190 Cal.App.4th 1106, 1112.)

Section 361.5, subdivision (b)(10) and (b)(11), "contemplate[] a two-prong inquiry: (1) whether the parent previously failed to reunify with the child's sibling or half sibling; and (2) whether the parent 'subsequently made a reasonable effort to treat the problems that led to [the] removal of the sibling or half sibling.' " (*B.H.*, *supra*, 243 Cal.App.4th at p. 736.) "We do not read the 'reasonable effort' language in the bypass provisions to mean that *any* effort by a parent, even if clearly genuine, to address the problems leading to removal will constitute a reasonable effort and as such render these provisions inapplicable. It is certainly appropriate for the juvenile court to consider the *duration, extent and context* of the parent's efforts, as well as any other factors relating to the *quality and quantity* of those efforts, when evaluating the effort for reasonableness. And while the degree of progress is not the *focus* of the inquiry, a parent's progress, or lack of progress, both in the short and long term, may be considered to the extent it bears on the *reasonableness* of the effort made. [¶] Simply stated, although success alone is not the sole measure of reasonableness, the *measure* of success

12

achieved is properly considered a factor in the juvenile court's determination of whether an effort qualifies as reasonable." (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914-915.)

" 'The standard of review of a dispositional order on appeal is the substantial evidence test, "bearing in mind the heightened burden of proof." ' " (*In re Madison S.* (2017) 15 Cal.App.5th 308, 325.) "[O]nly one valid ground is necessary to support a juvenile court's decision to bypass a parent for reunification services . . . ." (*Id.* at p. 324; see *In re Lana S.* (2012) 207 Cal.App.4th 94, 108 [evidence of parent's lengthy history of drug abuse sufficient to deny parent reunification services].)

B. *Mother Failed to Make Subsequent Reasonable Efforts to Treat the Problems That Led to Removal*

Mother acknowledges that her other children, P.T. and T.T., were previously removed from her custody due, in part, to her substance abuse and mental health issues. She contends she made reasonable efforts to treat the problems that led to their removal.

Substantial evidence supports the court's finding that mother failed to make a reasonable effort to treat her mental health and drug abuse issues. She reported that she was prescribed psychotropic medications approximately 10 years earlier, and said she stopped taking them because she did not like the way they made her feel. She testified that she had been diagnosed with bipolar disorder, for which she was regularly taking medication 10 years earlier, but the medication was too strong for her. She said she was currently not taking medication. When asked what she was doing to treat her mental health, she said she was just seeing a therapist once a week. In other words, she was only

13

treating her mental health with weekly therapy, but no medication. The evidence shows CFS was unable to confirm with mother's doctor that she was receiving any treatment since mother did not give consent to release information. Thus, mother's failure to remain on her psychotropic medication and her unverified and unspecified mental health treatment demonstrate that the trial court's determination that she had not made a reasonable effort to treat her longstanding mental health issues since her prior dependency case is supported by substantial evidence.

Furthermore, with respect to substance abuse, mother initially denied that she used any illicit or prescription drugs, although she admitted to using marijuana. However, she tested positive for opiates, benzodiazepines, and marijuana at the time CFS first became involved in the instant case, and she admitted taking unknown pills, which resulted in her overdose. Mother later tested positive for marijuana on May 1, June 15, June 30, and July 14. On July 31, she tested positive for marijuana and benzodiazepines. On August 31, she tested positive for marijuana and opiates. Mother failed to show up for her drug tests on November 2, November 4, December 10, and December 22, 2020. She tested positive for ethanol on October 30, 2020. Mother asserts that she completed a drug and alcohol awareness program, was attending NA/AA meetings, had a hair follicle test that showed only marijuana use and had stopped relying on marijuana to treat her migraines. Although mother had made some efforts, they did not appear to have much effect. While she was receiving services at Cedar House, she tested positive for methamphetamines on December 4, 2020, and again on December 8, 2020. When Cedar House asked her to

complete a crisis session and update her treatment plan, mother refused to do so.

Moreover, despite her positive tests, she still insisted that she did not use drugs.

We conclude substantial evidence supported the court's finding that mother failed to make a reasonable effort to treat her mental health and drug abuse issues. She has had 10 years to address her issues. Her multiple missed drug tests, refusal to acknowledge that she used drugs—even in the face of positive tests—and her refusal to participate in recommended programs, all indicate her lack of interest in being treated. Therefore, sufficient evidence supports the court's order denying mother reunification services pursuant to the bypass provisions of section 361.5, subdivision (b)(10) and (b)(11).

C. *The Court Properly Found It Was Not in K.T.'s Best Interest to Order Reunification Services*

Mother claims the court should have ordered services under section 361.5, subdivision (c), since they were in K.T.'s best interest. She asserts that family preservation was a priority in dependency cases, she had already made progress on a service plan to treat her problems, and since K.T.'s father was receiving services, granting her services provided "for more continuity of treatment between the parents." The court found that it was not in K.T.'s best interest to offer services to mother, and we agree.

Section 361.5, subdivision (c), provides, in part, that the "court shall not order reunification for a parent . . . described in [any one of the bypass provisions] of subdivision (b) unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." (§ 361.5, subd. (c)(2).) " 'A juvenile

15

court has broad discretion when determining whether . . . reunification services would be in the best interests of the child under section 361.5, subdivision (c). [Citation.] An appellate court will reverse that determination only if the juvenile court abuses its discretion.' " (*In re G.L.* (2014) 222 Cal.App.4th 1153, 1164-1165.)

Here, the court properly found it was not in K.T.'s best interest to provide reunification services to mother. The court considered the duration, extent, and context of her current efforts and noted that she had "a longstanding issue and problem with substance abuse and medication abuse" that she was "still actively fighting." For the same reasons the court bypassed mother's services, the court could properly conclude that K.T.'s best interest was not served by the provision of services. (See § I.B., *ante*.) In light of mother's myriad of ongoing problems and failure to accept responsibility for continued drug abuse, the court did not abuse its discretion in determining that reunification services were not in the best interest of K.T.

II. The Court Properly Granted Sole Legal and Physical Custody of M.T. to His Father

Mother argues that the court's decision to grant R.E. (father) sole legal and physical custody of M.T. was arbitrary. We conclude the court properly placed M.T. with father.

A. *Relevant Law*

Section 361.2, subdivision (a), "establishes the procedures a court must follow for placing a dependent child following removal from the custodial parent pursuant to section 361. [Citation.] Subdivision (a) of section 361.2 provides that when a court orders removal of a minor under section 361, the court 'shall first determine' whether there is a

16

parent who wants to assume custody who was not residing with the minor at the time the events that brought the minor within the provisions of section 300 occurred.  [Citation.]  If that parent requests custody, the court 'shall place' the child with the parent unless 'it finds that placement with that parent would be detrimental to the minor.'  [Citation.]" (*In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1820-1821, fn. omitted (*Marquis D.*).)  In other words, "[i]f there is no showing of detriment, the court must order the Agency to temporarily place the child with the nonoffending noncustodial parent.  The court then decides whether there is a need for ongoing supervision.  If there is no such need, the court terminates jurisdiction and grants that parent sole legal and physical custody." (*In re Austin P.* (2004) 118 Cal.App.4th 1124, 1135; see § 361.2, subd. (b)(1).)  Section 361.2 "evidences 'the Legislative preference for placement with [the nonoffending noncustodial] parent.' " (*In re John M.* (2006) 141 Cal.App.4th 1564, 1569.)  "It is the burden of the party or parties opposed to such placement to prove detriment by 'clear and convincing evidence.' " (*In re K.B.* (2015) 239 Cal.App.4th 972, 979 (*K.B.*).)

"A court's decision to deny reunification services to the offending parent and grant the nonoffending parent full legal and physical custody of the child is reviewed for 'abuse of discretion.' " (*K.B.*, *supra*, 239 Cal.App.4th at p. 981.)

B.  *The Court Did Not Abuse its Discretion*

In support of her position, mother points out that she provided care to M.T. for the first three years of his life, he did not have any health issues, and he had demonstrated age-appropriate fine and gross motor skills.  She also asserts she was attending therapy, completed two parenting programs and a drug and alcohol awareness class, was

17

participating in treatment at Cedar House, and had housing, transportation, and a job. We observe that mother has not shown, or even alleged, any detriment in placing M.T. with father. (*K.B.*, *supra*, 239 Cal.App.4th at p. 979.)

We find no abuse of discretion here. On the contrary, we conclude it was reasonable for the court to find that granting father custody would be in M.T.'s best interest. The evidence presented to the court was that father was a nonoffending parent who desired custody of M.T. and had the ability to provide him with a safe and healthy environment. M.T. had a 29-day trial visit with father, upon CFS's recommendation, so that CFS could assess father's ability to care for him. The social worker observed that father had plenty of provisions, and M.T. did well in his care during the trial visit. Moreover, since there was no showing of detriment, the court properly granted father sole legal and physical custody and terminated its jurisdiction.[7] (*Marquis D.*, *supra*, 38 Cal.App.4th at pp. 1820-1821; § 361.2, subds. (a) & (b)(2).)

---

[7] We note the family law order provided for mother to have supervised visits once a week. (§ 361.2, subd. (b)(2).)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


FIELDS _____
J.


We concur:


RAMIREZ _____
P. J.


MILLER _____
J.