Filed 9/29/23  In re Emma G. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Emma G., a Person Coming Under the Juvenile Court Law. | |
| SONOMA COUNTY HUMAN SERVICES DEPARTMENT,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL G.,<br><br>        Defendant and Appellant. | A166812, A166984<br><br>(Sonoma County Super. Ct. No. DEP6641) |

Michael G. (father) appeals the denial of reunification services with Emma G., his twelve-year old daughter.  He argues there was insufficient evidence to support the juvenile court's order bypassing him for reunification services based on his allegedly severe physical abuse of Emma G.  (Welf. & Inst. Code, § 361.5, subd. (b)(6); undesignated statutory references are to this code.)  He further contends the court abused its discretion by determining reunification services were not in Emma G.'s best interests.  We affirm.

1

## BACKGROUND

Father has had sole custody of Emma G. since 2017. Although Stephanie P. (mother) initially lived with Emma G., she now resides in Texas.

In 2017, Emma G.'s maternal half sibling, Austin M., was declared a dependent of the juvenile court due to mother's substance abuse; father regularly engaging in domestic violence in front of the children; and unsanitary living conditions, such as their housing lacking a restroom, sleeping accommodations, running water, and access to food. Ultimately, Austin M.'s juvenile dependency case was dismissed with sole legal and physical custody awarded to mother in 2019.

In July 2022, police responded to a report that father sexually abused Emma G. During a forensic interview, she stated father digitally penetrated her vagina when she was younger, approximately eight years old or five to six years old, and while they were in bed together. She told father to stop, but he continued to put his hand under her nightgown and underwear and touch her " 'privates.' " Although the incident happened years ago, she only recently reported those events to mother. Since that time, father and Emma G. continued to share a bed. He forced her to snuggle with him, during which time he touched her breasts. When she attempted to get away from father, he forcibly held her tighter. Father also set up a video camera in the room. Although he claimed the camera did not work, Emma G. reported seeing its light on. As a result, she changed her clothes with her back turned to the camera. She also tried to sleep at the foot of the bed.

Emma G. also reported father slapped her in the face and, on one occasion, held her up by her chin and neck so that her toes barely touched the ground. According to the child, father grabbed her arm, leaving a bruise.

She also had bruises on her leg from father kicking or tripping her. On another occasion, father hit her with one of his shoes, leaving a bruise on her hip. Father regularly took his anger out on Emma G., calling her "dumbass," and a "bitch." She felt unsafe, experienced goosebumps and stomach aches, and described needing to take ice-cold baths to regulate her body when she is angry. She reported having suicidal and self-harm ideation.

Father also assaulted other people in front of Emma G., including his girlfriends and Emma G.'s paternal grandfather. Over the course of three days in August 2018, police were summoned to father's residence seven times regarding domestic violence disputes with his girlfriend. These incidents — involving father breaking down a locked bedroom door and throwing items — occurred in Emma G.'s presence. At the time, father was using methamphetamine. In one instance, father was arrested for domestic violence but eventually pleaded guilty to a lesser charge.

For his part, father denied physically disciplining Emma G. or being physically aggressive in her presence. He further denied any sexual abuse, maintaining mother influenced Emma G. to fabricate the events.

The Sonoma County Human Services Department (Department) filed a petition in July 2022 alleging Emma G. came under the jurisdiction of the juvenile court. (§ 300 et seq.) The Department noted it believed Emma G.'s report of emotional, physical, and sexual abuse by father. The court detained Emma G., placed her with her paternal grandmother, and denied father's request for visitation. After a jurisdictional hearing in September 2022, the court sustained the Department's allegations — that Emma G. was at a substantial risk of serious physical harm due to father's physical violence (§ 300, subd. (a)); she suffered or was at substantial risk of suffering serious physical harm because mother failed to protect her from father's sexual abuse

3

(*id.*, subd. (b)(1)); she suffered serious emotional distress as a result of father's abuse (*id.*, subd. (c)); she was sexually abused by father (*id.*, subd. (d)); and Emma G.'s sibling, Austin M., had been abused or neglected and there was a substantial risk Emma G. will be treated similarly.

Relevant here, the Department's September 2022 report recommended reunification services for father, which Emma G. and mother opposed. Emma G. expressed anger toward father and had no wish to return to his care. At a judicial settlement conference on the reunification issue, Emma G.'s counsel noted the evidence supported a bypass of reunification services for father. (§ 361.5, subd. (b)(6).) Father argued he was entitled to reunification services, based primarily on the Department's recommendation. The following month, father had begun therapy and was participating in a domestic violence program. Emma G., however, did not want to reunify or have visitation with father at that time. She was interested in father participating in services, apologizing to her, and taking responsibility for his conduct.

After reviewing the Department's reports, detention report, jurisdiction report, and father's trial brief, the juvenile court concluded there was clear and convincing evidence of severe physical and emotional abuse of Emma G. Thus, the court concluded, father should be bypassed for reunification services under section 361.5, subdivision (b)(6).

At a January 2023 hearing, father presented testimony by the Department's social worker, who was qualified as an expert in social work. Rather than assessing Emma G.'s best interests, the social worker testified father did not fit within the bypass provision because any physical abuse was not sufficiently severe under the statute. The social worker emphasized she had not seen any evidence of physical abuse by father, only occasional

4

bruises. She noted there were no doctor or hospital visits with regard to these injuries. The social worker reviewed text messages between father and Emma G. before the child was detained. She testified the messages were affectionate, with father and the child regularly and mutually stating "I miss you" and "I love you."

The juvenile court continued to conclude the section 361.5, subdivision (b)(6) bypass provision applied here, and it determined reunification services for father were not in Emma G.'s best interests. It explained that although there was evidence in the record that father loves Emma G., she categorically stated she did not want to live with him again. She also wanted father to apologize and to receive some services. But the court noted the issue was whether *Emma G.*, not father, would benefit from the services. And nothing in the record indicated such services would result in reunification.

## DISCUSSION

Dependency law contains a strong preference for preserving family relationships if possible. (*In re Baby Boy H.* (1998) 63 Cal. App. 4th 470, 474.) To that end, juvenile courts must order reunification services to parents when their children are removed from their custody. (§ 361.5, subd. (a); *Baby Boy H.*, at p. 474.) But "in certain situations, attempts to facilitate reunification do not serve and protect the child's interests." (*Baby Boy H.*, at p. 474.) Thus, there are certain statutory exceptions — reunification bypass provisions — to the requirement that reunification services must be provided to a parent. (§ 361.5, subd. (b)(1)–(17); *Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 597.)

Relevant here, reunification may be bypassed if the child has been adjudicated a dependent under any subdivision of section 300 as a result of the parent inflicting severe physical harm to the child. (§ 361.5,

5

subd. (b)(6)(A).) Infliction of severe physical harm may be based on, but is not limited to, "deliberate and serious injury inflicted to or on a child's body" by a parent's act or omission, or "any other torturous act or omission that would be reasonably understood to cause serious emotional damage." (§ 361.5, subd. (b)(6)(C).) If the court finds clear and convincing evidence that section 361.5, subdivision (b)(6) bypass applies, it is prohibited from ordering reunification services unless the parent establishes reunification would nonetheless be in the child's best interest. (§ 361.5, subd. (c)(2); *In re A.E.* (2019) 38 Cal.App.5th 1124, 1141 (*A.E.*).) Specifically, the parent must demonstrate by clear and convincing evidence that reunification is in the best of the child. (*A.E.*, at p. 1141.)

## I.

Father argues there was insufficient evidence to support the juvenile court's finding that he deliberately inflicted severe physical harm on Emma G. to support bypassing reunification services under section 361.5, subdivision (b)(6). After reviewing the court's determination for substantial evidence — considering "whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable" that the facts at issue are true, drawing all reasonable inferences from the evidence to uphold the court's order — we disagree.[1] (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996; *D.F. v. Superior Court* (2015) 242 Cal.App.4th 664, 669.)

In concluding the section 361.5, subdivision (b)(6) bypass provision applied, the juvenile court found Emma G. experienced "significant trauma" and "severe physical and emotional harm over the course of many years."

_____

[1] Although the Department did not file a notice of appeal, it submitted a brief noting it had no objection to father receiving reunification services.

6

Ample evidence supports those findings.  In statements to the Department's social worker, the child reported father picked her up off the ground by her chin.  He grabbed her arms and kicked her legs, leaving bruises.  In one instance, father hit her with one of his shoes, bruising her right hip.  In another instance, father slapped her after she went outside to sit in a hammock, leaving a red hand mark and a small bruise.  Although father denied these incidents, the Department noted it had not found any evidence supporting father's version of events.  The court was entitled to credit Emma G.'s statements to the social worker and discount father's denials regarding his actions.  (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 996.)

In addition, the record as a whole contains substantial evidence from which the juvenile court could have found it highly probable father sexually abused Emma G — torturous conduct reasonably understood to cause serious emotional damage.  (§ 361.5, subd. (b)(6); *Pablo S. v. Superior Court* (2002) 98 Cal.App.4th 292, 301.)  In her report to police officers, the child stated father digitally penetrated her vagina when she was approximately eight years old.  Since that one incident, father required her to share a bed with him while he touched her breasts and body against her will on an ongoing basis.  Because father had a video camera in his bedroom, the child tried to change her clothes with her back to the camera — all allegations the Department expressly credited.  Moreover, the record demonstrates Emma G. has already suffered emotional damage.  She felt unsafe, slept at the foot of her father's bed, she had goosebumps on her body, stomach aches, depression, and self-harm and suicidal ideation.  Father's bald assertion that these circumstances could not be reasonably viewed as torturous conduct is unworthy of credit.  Father fails to cite any case law to the contrary.  And his arguments that Emma G.'s reports were false ignore the standard of review — we defer to the

court's credibility determinations and resolutions of evidentiary conflicts.  (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52–53.)

Relying on a series of cases regarding jurisdictional determinations that minors suffered serious physical harm, father argues any physical abuse he inflicted on Emma G. was not sufficiently severe to authorize bypassing him for reunification services.  (See, e.g., *In re Mariah T.* (2008) 159 Cal.App.4th 428, 438 [striking three-year-old child on stomach and forearms resulting in deep purple bruises constitutes serious physical harm]; *In re David H.* (2008) 165 Cal.App.4th 1626, 1644 [child struck with belt, cord, or ruler resulting in welts, bruises and broken skin].)  And according to father, any abuse only resulted in a few bruises, and none of her injuries required any doctor or hospital visit.  But while these cases provide specific examples of serious physical harm, they do not create a minimum standard for finding severe physical abuse.  That perhaps more serious abuse was inflicted in cases cited by father does not excuse his conduct here.  (*Pablo S. v. Superior Court*, *supra*, 98 Cal.App.4th at p. 302.)  Moreover, father fails to cite any authority requiring minors to suffer broken skin, welts, or injuries requiring medical attention before a juvenile court may find the parent inflicted severe physical abuse.  (See, e.g., *In re Benjamin D.* (1991) 227 Cal.App.3d 1464, 1472 [child was at risk for serious physical harm where parent pinched child in anger causing bruising lasting for several days].)  Rather, the finding may be based on father's deliberate and serious injury inflicted on Emma G. (§ 361.5, subd. (b)(6)(C).)  That exists here.

To the extent father suggests the juvenile court should have credited the testimony of the Department's social worker — that there was lack of evidence of serious physical abuse or physical injury, or that father did not meet the criteria for bypassing reunification services — we disagree.  The

8

court, as the trier of fact, was entitled to entirely reject the social worker's testimony, even though she testified as an expert witness. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 632–633.) Viewing the evidence in the light most favorable to the court's decision, we conclude substantial evidence supported its finding that father inflicted severe physical harm on Emma G. The bypass statute was thus satisfied.[2]

## II.

Father contends the juvenile court abused its discretion by finding that providing reunification services would not be in Emma G.'s best interests. (§ 361.5, subd. (c); *Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1125 [abuse of discretion standard of review for juvenile court's best interest determination].) We disagree.

When determining whether providing reunification services would be in the minor's best interests, section 361.5 requires the court to consider any information it deems relevant. (§ 361.5, subd. (i).) This includes (1) the "specific act or omission" that caused the severe physical harm; (2) "circumstances under which" the harm was inflicted; (3) the "severity of the emotional trauma"; (4) "history of abuse of other children by the offending parent;" (5) the likelihood the child may be safely returned to the care of the offending parent within 12 months with no continuing supervision; and (6) whether "the child desires to be reunified with the offending parent." (§ 361.5, subd. (i).) Best interest determinations encompass a consideration

---

[2] While father argues there was insufficient evidence to support the juvenile court's determination because it also relied on incidents of father screaming at Emma G., calling her names, or witnessing domestic violence, we disagree. We affirm the court's decision if it is correct on any basis, regardless of the basis that was actually invoked. (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255.) As discussed above, the court's decision was correct.

of "the parent's current efforts, fitness, and history; the seriousness of the problem that led to the dependency; the strength of the parent-child and caretaker-child bonds; and the child's need for stability and continuity." (*In re Allison J.* (2010) 190 Cal.App.4th 1106, 1116.) Essentially, before offering services to a parent who has been bypassed, there must be a reasonable basis to conclude reunification is possible. (*In re William B.* (2008) 163 Cal.App.4th 1220, 1228–1229.)

Father failed to demonstrate by clear and convincing evidence Emma G. would benefit from court-ordered reunification services. (*Jennifer S. v. Superior Court*, *supra*, 15 Cal.App.5th at p. 1124.) Rather, the evidence here established father inflicted severe physical harm on Emma G. in the form of repeated severe physical abuse while in his care — as discussed above, he physically inflicted harm and sexually abused Emma G. This ongoing behavior severely affected her emotionally — she has depression, suicidal and self-harm ideation, feelings of being unsafe in father's home and, according to the Department, physical manifestations of stress and anxiety, such as stomachaches. (§ 361.5, subds. (i)(1)–(3).)

Although father recently began to attend therapy and participate in domestic violence services, he continuously denied the veracity of Emma G.'s physical and sexual abuse allegations. In those circumstances — where a parent has consistently deemed physical abuse allegations false — courts have noted there is no evidence reunification services could lead to adequate protection of the children. (*A.E.*, *supra*, 38 Cal.App.5th at p. 1145.) Moreover, the Department reported father lacks insight into how his actions have harmed Emma G. (Cf. *In re Jasmine G.* (2000) 82 Cal.App.4th 282, 288 [when assessing whether removal under § 361 is appropriate, parental

expressions of remorse for using physical discipline may partially support a finding there is clear and convincing evidence a minor can return home].)

Contrary to father's suggestion, the social worker's statement that father would "definitely benefit" from reunification services fails to satisfy his burden. The relevant inquiry here is whether reunification services are in *Emma G.'s* best interests, not father's. Indeed, the social worker lacked any opinion regarding that point — she simply testified the bypass provision did not apply here because father's physical abuse was not sufficiently severe. Aside from the social worker's broad belief that services would assist rebuilding father's relationship with Emma G., father fails to identify any evidence in the record suggesting how reunification services would be effective in modifying his behavior or prevent him from inflicting similar injuries in the future. (*A.E.*, *supra*, 38 Cal.App.5th at p. 1145.) A finding otherwise would be entirely speculative. (*Ibid.*)

Citing Emma G.'s concession that she had an affectionate relationship with father and loved and missed him, father suggests Emma G. desires to reunify with him. (§ 361.5, subd. (i)(6).) Not so. Emma G. noted she did not want to return to his care. She wanted him to apologize before attempting to have a relationship. Rather than apologize, father repeatedly denied he engaged in physical or sexual abuse. When considered in light of the entire record, such as the severe physical abuse and resulting harm Emma G. suffered, her brief statements regarding any positive attachment to father does not satisfy his burden of demonstrating reunification is in her best interests. (*A.E.*, *supra*, 38 Cal.App.5th at p. 1147.) Accordingly, the juvenile court did not abuse its discretion in finding that reunification services would not benefit Emma G.

**DISPOSITION**

The order bypassing father for reunification services is affirmed.

                      _____

                      Rodríguez, J.

WE CONCUR:


_____

Fujisaki, Acting P. J.


_____

Petrou, J.


A166812; A166984